IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No. 0:21-cv-61026

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CARLOS M. ROVATI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

1. The United States of America brings this action to collect outstanding civil penalties assessed against Defendant Carlos M. Rovati for his failure to timely report his financial interest in foreign bank accounts, as required by 31 U.S.C. § 5314 and its implementing regulations, accrued interest on such penalties, late payment penalties, and associated fees. In support, the United States alleges as follows:

### JURISDICTION AND VENUE

2. The United States brings this suit under 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C), at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Internal Revenue Service (IRS), a delegate of the Secretary of the Treasury of the United States.

3. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute, the United States is the plaintiff, and the action seeks recovery or enforcement of civil penalties.

4. Venue is proper in this district under 28 U.S.C. § 1391(c)(1) because Rovati is a United States citizen who resides in this district.

## DEFENDANT

5. Rovati moved to the United States from Venezuela in 2000.

6. Rovati became a resident alien in 2000 and was a full-time United States resident during 2012 and 2013.

7. Rovati has been filing United States federal income tax returns (Forms 1040) since 2000.

8. Rovati lived and maintained residences in this district since 2000.

9. Rovati is an engineer. He owns several companies associated with the aeronautical industry.

10. Rovati did business around the world. Between 2006 and 2014, Rovati travelled to Venezuela, Columbia, China, Dominican Republic, Brazil, France, the United Kingdom, and Spain.

11. Rovati also traveled to Switzerland once or twice per year while living in the United States.

## REGULATORY BACKGROUND REGARDING THE DUTY TO REPORT RELATIONSHIPS WITH FOREIGN FINANCIAL INSTITUTIONS

12. Section 5314 of Title 31 authorizes the Secretary of the Treasury to require United States persons to report certain relationships and transactions with foreign financial agencies.

13. United States persons who have a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country that exceeds $10,000 in aggregate value must report those relationships to the United States.

14. For 2012, taxpayers were required to report the relationships on TD 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a), § 1010.306(c).

15. For 2013, taxpayers were required to report the relationships on Financial Crimes Enforcement Network (FinCEN) Form 114, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a), § 1010.306(c).

16. For 2012 and 2013, the years at issue, the FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c).

17. The penalty for violation of 31 U.S.C. § 5314's reporting requirements is set forth under 31 U.S.C. § 5321(a)(5)(C) and is subject to interest and further penalties pursuant to 31 U.S.C. § 3717.

18. Schedule B—Interest and Ordinary Dividends is a form that some taxpayers must attach to their Form 1040 Individual Income Tax Return.

19. Question 7a on Schedule B for the tax years 2012 and 2013 asked taxpayers if they had an interest in or signature or other authority over a financial account in a foreign country. The question was answered by checking boxes labeled yes or no. Question 7a on the 2012 Schedule B referred taxpayers to Form TD F 90-22.1. Question 7a from the 2013 Schedule B referred taxpayers to Form 114.

20. Question 7b on Schedule B, for the tax years 2012 and 2013, directed taxpayers to list the name of each foreign country where their accounts were located.

## CARLOS M. ROVATI'S FAILURE TO TIMELY REPORT HIS RELATIONSHIPS WITH FOREIGN FINANCIAL INSTITUTIONS

21. BSI SI ("BSI") is a corporation organized under the laws of Switzerland. It operates a global financial services business in more than 13 countries, including the United States. As of 2008, BSI had approximately 3,500 U.S. client accounts with total aggregate assets under management of approximately $2.78 billion, which included both declared and undeclared accounts. On March 25, 2015, BSI entered into a non-prosecution agreement with the Department of Justice (DOJ) as part of DOJ's Program for Non-Prosecution Agreements or Non-Target Letters for Swiss Banks ("Swiss Bank Program").

22. Credit Suisse AG ("Credit Suisse") is a corporation organized under the laws of Switzerland. It operates a global financial services business in more than 50 countries, including the United States. As of 2006, Credit Suisse had

approximately 22,000 U.S. client accounts with total aggregate assets under management of approximately $10 billion, which included both declared and undeclared accounts. On December 16, 2009, Credit Suisse entered into a deferred-prosecution agreement with the DOJ.

23. In 2012 and 2013 Rovati had a financial interest in, or signature authority over, foreign bank accounts held and managed by BSI and Credit Suisse.

24. In 2012, Rovati had a financial interest in, or signature authority over, foreign bank accounts with the maximum balances listed in the table below:

| 2012 | Bank | Account No. | Max. Balance |
|---|---|---|---|
| | BSI | x1579 | $1,913,756 |
| | Credit Suisse | x8254 | $1,942,533 |

25. Rovati did not report any of the relationships he had with foreign banks during 2012 on an FBAR before the June 30, 2013 deadline.

26. On his originally filed federal income tax return for 2012, Rovati did not file a Schedule B as required to report foreign interest income earned from the BSI and Credit Suisse accounts.

27. In 2013, Rovati had a financial interest in, or signature authority over, a foreign bank account with the maximum balance listed in the table below:

| 2013 | Bank | Account No. | Max. Balance |
|---|---|---|---|
| | BSI | x1579 | $2,013,696 |

28. Rovati did not report any relationship he had with a foreign bank during 2013 on an FBAR before the June 30, 2014 deadline.

29. On his originally filed federal income tax return for 2013, Rovati attached a Schedule B that was marked "no" in response to question 7a.

30. Rovati also maintained accounts at Julius Baer & Co. Ltd., another Swiss financial institution. Before Rovati closed the Julius Baer accounts in 2011, the high balance that year was $2,091,599.

31. Rovati opened the BSI account ending in -1579 in 2005.

32. Rovati opened the Credit Suisse and Julius Baer accounts sometime after opening the BSI account.

33. Rovati closed the Julius Baer accounts in or about 2011.

34. Rovati closed the Credit Suisse account in or about 2012.

35. Rovati closed the BSI account on January 7, 2015.

36. Rovati engaged in multiple efforts to secret his foreign accounts from the United States. For example, he maintained all three accounts as "numbered accounts," which removed his name from bank statements and identified the accounts exclusively by an account number.

37. Rovati opened the BSI account using a non-United States passport and provided a Declaration of non-United States status, dated July 11, 2003, listing a non-United States nationality and address.

38. Rovati also paid BSI an additional fee to "holdmail" so that correspondence would be retained at the bank and not sent to him in the United States. In 2012 and 2013, Rovati paid a "flat fee exclusive to privacy" for his BSI account.

### Carlos M. Rovati's Return Preparation

39. Since around 2009, Rovati had his tax returns prepared by Pina Yadonisi, an accountant employed by Casya Business Solutions Corp.

40. During each meeting with Ms. Yadonisi, she asked Rovati if he had any foreign bank accounts. Each year, Rovati responded that he did have foreign bank accounts but that the balances were all under $10,000 so they did not need to be reported.

### Carlos M. Rovati's Eventual Disclosure of Foreign Accounts

41. In or around June 2014, BSI contacted Rovati to inquire about an inflow of assets to his account from other Swiss bank accounts classified as United States-related. In response, Rovati requested that BSI close the account.

42. In December 2014, Rovati provided BSI a completed Form W-9, a limited waiver of Swiss banking secrecy permitting BSI to provide the W-9 to the IRS, and an IRS Preclearance to Make a Voluntary Disclosure Form.

43. In January 2015, BSI closed Rovati's account and transferred the remaining funds to a United States account held in his name.

44. On February 25, 2015, Rovati and his wife filed Form 14457 (Overseas Voluntary Disclosure Program), accompanied by an attached Form 14454 (Attachment to Offshore Voluntary Disclosure Letter) with the IRS (Forms 14457 and 14454 are collectively referred to here as the "disclosure").

45. Rovati's disclosure, however, only disclosed his BSI account. The disclosure did not list his accounts with Credit Suisse or Julius Baer even though the application instructions required all foreign accounts, open or closed, be listed.

46. In his disclosure Rovati stated he transferred $1,980,000 of his foreign income to his United States business accounts in 2011. Rovati further disclosed that he transferred foreign assets from the BSI account into his accounts at Mercantil Commerce Bank (Weston, FL) and BB&T Bank (Doral, FL).

47. Rovati also transferred assets from the BSI account to accounts held in the name of unknown entities at third-party banks in Panama.

48. During an interview with the IRS, Rovati stated that all of his investments in Switzerland were made prior to coming to the United States in 2000. However, Rovati opened the BSI account in 2005.

49. On August 6, 2018, Rovati was removed from OVDP.

50. On August 9, 2018 Rovati and his spouse filed amended federal income tax returns for 2011, 2012, and 2013. Each amended return included a delinquent Form 8938 (Statement of Specified Foreign Financial Assets).

51. On August 9, 2018, Rovati and his spouse filed delinquent FBARs for 2011, 2012, and 2013. After the IRS informed Rovati's counsel the FBARs needed to be filed electronically, Rovati re-filed electronic, delinquent FBARs for 2011, 2012, and 2013 on October 8, 2018.

52. Filing the August 9, 2018 delinquent FBARs was the first time Rovati disclosed the existence of the Credit Suisse and Julius Baer accounts to the IRS.

53. Rovati provided 2011, 2012, and 2013 bank statements from BSI, Credit Suisse, and Julius Baer during his IRS audit.

54. Rovati did not file a Schedule B with his 2012 tax return because he did not report receiving foreign interest or dividends. In reality, Rovati received $30,584 of foreign interest and $16,390 of foreign dividends in 2012.

55. Rovati filed a Schedule B with his 2013 tax return but only reported $101 of domestic interest and $41,614 of dividends from one of his domestic businesses, and checked "no" to question 7a, which asks whether the filer has a financial interest in or signature authority over a foreign bank account. In reality, Rovati received $29,497 of foreign interest and $5,475 of foreign dividends in 2013.

56. Rovati's original 2012 and 2013 tax returns were accompanied by a Schedule D for reporting capital gains. Rovati's original 2012 return listed $0 in capital gains while his 2013 return listed $418,254 in capital gains. These capital gains, however, were based only on flow-through capital gains from his business located in the United States. In fact, Rovati received and failed to report $173,430 of foreign capital gains in 2012 and $118,047 of foreign capital gains in 2013 from his overseas accounts.

## COUNT 1
### Judgment for § 5321 Penalties

57. Section 5321(a)(5) of Title 31 authorizes the imposition of civil penalties for willful violations of the reporting requirements of § 5314. Specifically, § 5321(a)(5)(C) provides for a penalty of the greater of $100,000 or 50% of the balance in the account at the time of the violation.

58. Rovati failed to disclose any of the relationships he had with foreign financial institutions during the years 2012 and 2013, by June 30 of the following year.

59. Rovati had income, from earnings on investments in the foreign bank accounts, that was not reported on his federal income tax returns for tax years 2012 and 2013.

60. On or about April 24, 2019 a delegate of the Secretary of the Treasury proposed the assessment of penalties against Carlos M. Rovati pursuant to 31 U.S.C. § 5321(a)(5)(A) and (B) for his willful failure to report his relationships with foreign financial institutions for the years 2012 and 2013 as follows:

| Year | Bank | Account No. | Penalty |
|---|---|---|---|
| 2012 | BSI | x1579 | $909,151 |
|  | Credit Suisse | x8254 | $100,000 |
| 2013 | BSI | x1579 | $919,003 |

61. On May 20, 2019, a delegate of the Secretary of the Treasury assessed the penalties described in paragraph 60.

62. On June 6, 2019, a delegate of the Treasury Secretary gave Rovati notice and demand for payment of the FBAR penalty assessments for the years 2012–2013.  Despite the notice and demand for payment, Rovati has failed to pay the FBAR penalties assessed against him.  Therefore, interest and other statutory additions continue to accrue on the unpaid assessments.

63. As of January 31, 2020, Rovati owed the United States $2,022,818.44 for the penalties assessed under 31 U.S.C. § 5321, plus interest and other statutory additions that have accrued, and will continue to accrue, as provided by law.

## RELIEF REQUESTED

The United States of America requests:

A. That the Court enter judgment in favor of the United States against Carlos M. Rovati for the civil penalties assessed against him for violations of 31 U.S.C. § 5314 for the years 2012 and 2013 in the amount of $2,022,818.44 as of January 31, 2020, plus penalties and interest that continue to accrue;

B. That the Court order any other relief that is just and proper.

Date: May 14, 2021

DAVID A. HUBBERT
Acting Assistant Attorney General

By:
*/s/ Zachary A. Gray*
ZACHARY A. GRAY
CA Bar # 291376
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
202-353-1988 (v) | 202-514-4963 (f)
Zachary.A.Gray@usdoj.gov

Of counsel:
JUAN ANTONIO GONZALEZ
Acting United States Attorney
Southern District of Florida

*Attorneys for the United States of America*